**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| LOLITHA FARRAR and NAKIA WOODARD, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Case No.: 1:25-cv-13005 |
| v. | Judge Sara L. Ellis |
| ARTHUR J. GALLAGHER (ILLINOIS), LLC, THE ARTHUR J. GALLAGHER & CO. EMPLOYEES' 401(k) SAVINGS AND THIFT PLAN BENEFITS COMMITTEE and JOHN DOES 1-10, | |
| Defendants. | |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**
**PLAINTIFFS' SECOND AMENDED COMPLAINT**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................. 1

    I.     There is no lesser or different pleading standard for ERISA claims ....................... 1

    II.    Plaintiffs fail to allege the Committee breached the fiduciary duty of prudence. ....................................................................................................... 2

         A.    Plaintiffs fail to allege *facts* regarding the Committee's process. ............... 2

         B.    Plaintiffs fail to allege a meaningful benchmark. ...................................... 3

         C.    Plaintiffs fail to allege "substantial" and "consistent" underperformance. ....................................................................................... 6

         D.    Plaintiffs fail to show their "comparators" were plausibly available. ........................................................................................................ 8

    III.   Plaintiffs fail to allege Defendants engaged in any prohibited transactions. ......... 10

         A.    Plaintiffs cannot amend the SAC through their Opposition. .................... 10

         B.    Plaintiffs fail to state a prohibited transaction claim based on "spread." .................................................................................................... 11

              1.    Plaintiffs fail to plead a "transaction" or any injury from it. ......... 11

              2.    "Spread" is not a plan asset. .......................................................... 12

    IV.   Plaintiffs' Opposition does not save their derivative monitoring claim or request for prospective injunctive relief. .............................................................. 14

CONCLUSION ............................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Acosta v. Bd. of Trs. of Unite Here Health*,
779 F. Supp. 3d 974 (N.D. Ill. 2025) ................................................................15

*Agnew v. NCAA*,
683 F.3d 328 (7th Cir. 2012) .............................................................2, 5, 10, 11

*Albert v. Oshkosh Corp.*,
47 F.4th 570 (7th Cir. 2022) ...........................................................................2, 3, 4

*Allen v GreatBanc Tr. Co.*,
835 F.3d 670 (7th Cir. 2016) ..........................................................................1, 6

*Appvion, Inc. Ret. Sav. & Emp. Stock Ownership Plan v. Buth*,
99 F.4th 928 (7th Cir. 2024) .............................................................................10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................................................................................1, 6, 15

*Austin v. Union Bond & Tr. Co.*,
No. 3:14-CV-00706-ST, 2014 U.S. Dist. LEXIS 177295 (D. Or. Nov. 10, 2014)..................13

*Baird v. BlackRock Institutional Tr. Co., N.A.*,
2021 WL 105619 (N.D. Cal. Jan. 12, 2021) ...........................................................14

*Barchock v. CVS Health Corp.*,
No. 16-061ML, 2017 U.S. Dist. LEXIS 59084 (D.R.I. Jan. 31, 2017) ....................................7

*Bausch v. Stryker Corp.*,
No. 08 C 4248, 2009 U.S. Dist. LEXIS 77572 (N.D. Ill. Aug. 31, 2009)...............................15

*Carter v. Sentara*,
No. 2:25-cv-16, 2025 U.S. Dist. LEXIS 165845 (E.D. Va. Aug. 11, 2025) ............................8

*Clinton v. Baxter Int'l Inc.*,
No. 25 CV 3368, 2025 U.S. Dist. LEXIS 253857 (N.D. Ill. Dec. 3, 2025)....................3, 5, 10

*Coyer v. Univar Sols. USA Inc.*,
No. 1:22 CV 0362, 2022 U.S. Dist. LEXIS 175972 (N.D. Ill. Sept. 28, 2022)........................15

*Cunningham v. Cornell Univ.*,
604 U.S. 693 (2025).................................................................................. passim

*D.L. Markham DDS v. Variable Annuity Life Ins. Co.*,
88 F.4th 602 (5th Cir. 2023) .............................................................................12

*Daugherty v. Univ. of Chi.*,
   No. 17 C 3736, 2017 U.S. Dist. LEXIS 155948 (N.D. Ill. Sept. 22, 2017)............................15

*Dawson v. Brookfield Asset Mgmt. LLC*,
   No. 1:25-cv-00852-PAB, 2026 U.S. Dist. LEXIS 64114 (N.D. Ohio Mar. 26, 2026)..............7

*Gardner-Keegan v. W.W. Grainger, Inc.*,
   No. 1:25-cv-5233, 2026 U.S. Dist. LEXIS 13772 (N.D. Ill. Jan. 26, 2026)...........................11

*Grink v. Virtua Health, Inc.*,
   No. 24-cv-09919, 2025 U.S. Dist. LEXIS 250854 (D.N.J. Dec. 3, 2025)................................4

*Healthcare Strategies, Inc. v. ING Life Ins. & Annuity Co.*,
   No. 3:11-CV-282 (JCH), 2012 U.S. Dist. LEXIS 6233 (D. Conn. Jan. 18, 2012).................13

*Hecker v. Deere & Co.*,
   556 F.3d 575 (7th Cir. 2009) .................................................................................................13

*Hughes v. Nw. Univ.*,
   595 U.S. 170 (2022)..................................................................................................................1

*Hughes v. Nw. Univ.*,
   63 F.4th 615 (7th Cir. 2023) ........................................................................................ passim

*Jacobs v. Hackensack Meridian Health, Inc.*,
   No. 25cv1272 (EP) (CF), 2026 U.S. Dist. LEXIS 52761 (D.N.J. Mar. 13, 2026) ...............4, 5

*John Hancock Mut. Life Ins. Co. v. Harris Tr. & Sav. Bank*,
   510 U.S. 86 (1993)..................................................................................................................13

*Lalonde v. Mass. Mutual Ins. Co.*,
   728 F. Supp. 3d 141 (D. Mass. Mar. 29, 2024) .......................................................................7

*Lau v. Metro. Life Ins. Co.*,
   2016 U.S. Dist. LEXIS 134681 (S.D.N.Y. Aug. 22, 2016).................................................8, 14

*Luckett v. Wintrust Fin. Corp.*,
   No. 22-cv-03968, 2023 U.S. Dist. LEXIS 121362 (N.D. Ill. July 14, 2023) .................3, 4, 15

*Martin v. CareerBuilder, LLC*,
   No. 19-cv-6463, 2020 U.S. Dist. LEXIS 115002 (N.D. Ill. July 1, 2020) ...............................2

*Matney v. Barrick Gold of N. Am.*,
   80 F.4th 1136 (10th Cir. 2023) ................................................................................................9

*Mazza v. Pactiv Evergreen Servs.*,
   No. 22 C 5052, 2023 U.S. Dist. LEXIS 86826 (N.D. Ill. May 18, 2023) ............................1, 2

*McGuire v. Metro. Life Ins. Co.*,
No. 12-10797, 2014 U.S. Dist. LEXIS 109584 (E.D. Mich. Aug. 8, 2014)............................14

*Moreno v. Deutsche Bank Ams. Holding Corp.*,
2016 WL 5957307 (S.D.N.Y. Oct. 13, 2016).............................................................14

*Rodriguez v. Hy-Vee, Inc.*,
No. 4:22-cv-00072-SHL-HCA, 2022 U.S. Dist. LEXIS 200906 (S.D. Iowa Oct. 21,
2022) ...............................................................................................................6

*Rozo v. Principal Life Fin. Ins. Co.*,
2015 WL 9920548 (S.D. Iowa Sept. 21, 2015) .........................................................14

*Russell v. Ill. Tool Works, Inc.*,
No. 22 C 2492, 2024 U.S. Dist. LEXIS 102157 (N.D. Ill. June 10, 2024) ............................15

*Smith v. CommonSpirit Health*,
37 F.4th 1160 (6th Cir. 2022) .........................................................................3, 8

*Somers v. Cape Cod Healthcare, Inc.*,
2024 U.S. Dist. LEXIS 156422 (D. Mass. Aug. 30, 2024)............................................8

*Sweeney v. Nationwide Mut. Ins. Co.*,
2026 WL 352845 (S.D. Ohio Feb. 9, 2026).........................................................10, 13

*Wood v. Prudential Ret. Ins.*,
2016 WL 5940946 (D. Conn. Sept. 19, 2016) .........................................................14

*Woznicki v. Aurora Health Care Inc.*,
2022 U.S. Dist. LEXIS 95368 (E.D. Wisc. May 27, 2022).........................................9

STATUTES

29 U.S.C. § 1101(b)(2) ..................................................................................13

29 U.S.C. § 1106(a) ..................................................................................11, 12

29 U.S.C. § 1108..........................................................................................13

**INTRODUCTION**

Plaintiffs argue they should not be held to ordinary pleading standards because they lack access to details about how the Plan is administered. That is incorrect. ERISA claims are subject to the same pleading rules as all others, and Plaintiffs must allege sufficient factual matter to state a plausible claim for relief. *Hughes v. Nw. Univ.*, 595 U.S. 170, 176-77 (2022). Plaintiffs fail to do so here. Their claims rest entirely on an allegation that the MassMutual GIF's crediting rate was 1% lower than a shifting set of other cherry-picked products. But Plaintiffs allege no facts showing that their purported comparators are meaningful benchmarks, that any alleged "underperformance" was substantial or consistent, or that their alternatives were available to the Plan at the time. And *Cunningham* does not excuse Plaintiffs' failure to plead a viable prohibited transaction claim.

Plaintiffs have amended their complaint multiple times, and the Court should dismiss the Second Amended Complaint ("SAC") with prejudice.

**ARGUMENT**

I. **There is no lesser or different pleading standard for ERISA claims.**

Plaintiffs suggest a "heightened fairness" pleading standard applies to their claims. (*See* Dkt. 23 ("Opp.") at 4.) No such standard exists.[1] ERISA claims must be plausibly pled, and Plaintiffs must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Mazza v. Pactiv Evergreen Servs.*, No. 22 C 5052, 2023 U.S. Dist. LEXIS 86826, at *9 (N.D. Ill. May 18, 2023) (Ellis, J.) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *Hughes v. Nw. Univ.*, 63 F.4th 615, 628 (7th Cir. 2023) ("*Hughes*

---

[1] The cases Plaintiffs cite say nothing about a "heightened fairness" standard. (*See* Opp. at 4 (citing *Allen v GreatBanc Tr. Co.*, 835 F.3d 670, 678 (7th Cir. 2016) ("[A]n ERISA plaintiff alleging breach of fiduciary duty does not need to plead details to which she has no access, *as long as the facts* alleged tell a *plausible* story.") (emphasis added); *Cunningham v. Cornell Univ.*, 604 U.S. 693, 705 (2025) (holding plaintiffs need not plead around prohibited transaction exemptions, and "fairness" usually requires the defendant to identify the exemption that it contends applies)).)

*II*") ("Plaintiffs must provide 'some further factual enhancement' to take a claim of fiduciary duty violation from the realm of 'possibility' to 'plausibility.'"). That is, "[t]o plead a breach of the duty of prudence under ERISA, a plaintiff must plausibly allege fiduciary decisions outside a range of reasonableness." *Mazza*, 2023 U.S. Dist. LEXIS 86826, at *9 (quoting *Hughes II*, 63 F.4th at 630).[2] And in assessing plausibility, the court must conduct a "careful, context-sensitive scrutiny" of the *factual* allegations. *Id.* at *9-10 (citing *Albert v. Oshkosh Corp.*, 47 F.4th 570, 577 (7th Cir. 2022)).

## II.    **Plaintiffs fail to allege the Committee breached the fiduciary duty of prudence.**

### A.    **Plaintiffs fail to allege *facts* regarding the Committee's process.**

The duty of prudence is "processed-based, not outcome-based." *Martin v. CareerBuilder, LLC*, No. 19-cv-6463, 2020 U.S. Dist. LEXIS 115002, at *9 (N.D. Ill. July 1, 2020). Yet Plaintiffs concede they lack knowledge regarding the Committee's decision-making process for selecting, monitoring, or removing the Plan's investments. (SAC ¶ 70.) Now, without citation, Plaintiffs assert in their Opposition that "the SAC details Defendants' unreasonable decision making," such as failing to investigate alternative GICs, solicit bids, negotiate effectively, leverage Plan assets to achieve reasonable rates, and failing to remove the MassMutual GIF and replace it "with a safer or higher performing" option. (Opp. at 1, 5.) None of this appears in the SAC, and Plaintiffs cannot amend the SAC through their Opposition. *Agnew v. NCAA*, 683 F.3d 328, 348 (7th Cir. 2012).

At most, Plaintiffs allege what they contend a prudent process should look like, and then baldly allege the Committee breached the duty of prudence by retaining the MassMutual GIF because its crediting rate was supposedly 1% lower than other random products. (*See* SAC ¶ 14, 84.) In other words, Plaintiffs ask the court to *infer* an imprudent process from alleged

---

[2] Plaintiffs erroneously argue Defendants "materially misrepresent Seventh Circuit precedent." (Opp. at 5.) Not true. Defendants accurately quoted from this Court's decision in *Mazza*, 2023 U.S. Dist. LEXIS 86826, at *9-10, which accurately quoted from the Seventh Circuit's decision in *Hughes II*. (Dkt. 22 ("Motion") at 5.)

underperformance alone. But underperformance alone does not raise an inference of imprudence. (Motion at 5); *Albert*, 47 F.4th at 581 ("A complaint cannot simply make a bare allegation . . . that returns are too low."); *Luckett v. Wintrust Fin. Corp.*, No. 22-cv-03968, 2023 U.S. Dist. LEXIS 121362, at *11 (N.D. Ill. July 14, 2023) ("'[U]nderperformance' is not imprudence," and "courts do not 'infer imprudence every time a fiduciary retains a fund that fails to turn in best-in-class performance.'") (citations omitted); *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1166 (6th Cir. 2022) ("[m]erely pointing to another investment that has performed better in a five-year snapshot" is insufficient to plead imprudence).

> **B.      Plaintiffs fail to allege a meaningful benchmark.**

To state a plausible claim based on alleged "underperformance," Plaintiffs "must provide a sound basis for comparison—a meaningful benchmark"—by which to compare the MassMutual GIF's crediting rate. *Albert*, 47 F.4th at 581. Contrary to Plaintiffs' argument (Opp. at 7), the Court *must* assess Plaintiffs' factual allegations and the characteristics of Plaintiffs' comparators to ensure that they provide a "sound basis for comparison." *See, e.g.*, *Luckett*, 2023 U.S. Dist. LEXIS 121362, at *10-11 (rejecting argument that "the question of comparators should not be resolved on motion to dismiss"). This inquiry is essential to the Court's "careful, context-sensitive scrutiny" inquiry into whether Plaintiffs have alleged ***facts*** sufficient "to cross the line from possibility to plausibility." *Albert*, 47 F.4th at 577, 580; *Hughes II*, 63 F.4th at 634.

Plaintiffs assert that Defendants are raising premature factual disputes. (Opp. at 7 (citing *Clinton v. Baxter Int'l Inc.*, No. 25 CV 3368, 2025 U.S. Dist. LEXIS 253857, at *14 (N.D. Ill. Dec. 3, 2025).) It is true that *Clinton* stated: "where the complaint alleges only that all stable value funds provide plan participants a low-risk option, any differences in degree (and their relevance) are questions for another day." 2025 U.S. Dist. LEXIS 253857, at *14. But that statement is dicta and was not outcome-determinative. *Id.* at *17. The court ultimately *granted* the defendants' motion to

dismiss because, like here, plaintiffs alleged "only a rotating cast of other funds with higher crediting rates," which "cannot support a claim of imprudence." *Id.* Accepting Plaintiffs' position that all stable value funds are automatically sufficient comparators would eliminate the "careful, context-sensitive scrutiny" into whether Plaintiffs have alleged ***facts*** "to cross the line from possibility to plausibility," as mandated by *Hughes II*, 63 F.4th at 634 and *Albert*, 47 F.4th at 577. (*See* Motion at 7); *Luckett*, 2023 U.S. Dist. LEXIS 121362, at *9-12.[3]

Recent cases confirm that generalized SVF comparisons are insufficient. In *Jacobs v. Hackensack Meridian Health, Inc.*, No. 25cv1272 (EP) (CF), 2026 U.S. Dist. LEXIS 52761 (D.N.J. Mar. 13, 2026)—another case filed by Plaintiffs' Counsel—the court rejected the argument that all SVFs are comparable because "a plaintiff could use any better-performing fund as an alleged comparator to survive a motion to dismiss as long as they allege that those two funds are substantially similar." *Id.* at *28-29. *Jacobs* dismissed the SVF claim because plaintiffs failed to allege sufficient facts about their comparators beyond crediting rates, leaving the court unable to determine whether the comparators were "substantially similar" to render them "meaningful" such that the allegations raised an "inference that Defendant violated its duty of prudence." *Id.* at *29-35; *see also Grink v. Virtua Health, Inc.*, No. 24-cv-09919, 2025 U.S. Dist. LEXIS 250854, at *32-35 (D.N.J. Dec. 3, 2025) (dismissing SVF claim because alleging separate account SVFs were "less risky" and "better performing" without factual support was not a meaningful benchmark).

Here, Plaintiffs "comparators" are not meaningful benchmarks because they allege no *facts* regarding their comparator funds other than crediting rates. (*See* Motion at 7; SAC ¶¶ 89-116.) As Defendants explained, Plaintiffs merely picked terms from Gallagher's Form 5500 that describe

---

[3] Plaintiffs repeatedly assert that mutual fund cases are not relevant because the MassMutual GIF is a type of SVF. (Opp. at 7, 8 n.2, 10.) Another court has rejected this same argument from Plaintiffs' Counsel. *See Jacobs*, 2026 U.S. Dist. LEXIS 52761, at *31 n.13.

common characteristics of all SVFs and assert that plans offering SVFs with Form 5500s that include similar terms are comparable. (*See* Motion at 7.) Plaintiffs did not respond to this argument, and their Opposition fails to explain why their "comparators" are meaningful benchmarks. Instead, Plaintiffs assert that all SVF crediting rates are comparable and that because the MassMutual GIF's crediting rate was allegedly lower than a random assortment of other SVFs, the Committee must have breached its fiduciary duties. (Opp. at 8-10.) This is plainly insufficient to allege a meaningful benchmark, and courts have rejected far more detailed allegations. (*See, e.g.*, Motion at 7-8); *Jacobs*, 2026 U.S. Dist. LEXIS 52761, at *33-35. And Plaintiffs cannot rely on facts alleged about comparator funds in *other* SVF cases to support the sufficiency of the allegations in the SAC at issue here. (*See* Opp. at 8); *Agnew*, 683 F.3d at 348.

Plaintiffs also baldly allege the MassMutual GIF is "risky" because it is a general account product and therefore should have had a higher crediting rate. (SAC ¶¶ 79-82.) But Plaintiffs allege no *facts* regarding the credit risk or stability of the insurer underlying the MassMutual GIF. (*Id.*) And this argument is contradicted by their own allegations that the amount of risk is irrelevant to crediting rate. (*See id.* ¶ 115.)

Finally, Plaintiffs fail to address Defendants' argument (Motion at 6) that they have provided "only a rotating cast of other funds with higher crediting rates," which *Clinton* found to be fatal. 2025 U.S. Dist. LEXIS 253857, at *17. Plaintiffs' comparators through 2023 are nearly identical to *Clinton*, with the addition of a single fund (Shands Jacksonville) across all years. (*Compare* SAC ¶¶ 94-110 to, *Clinton*, No. 1:25-cv-03368, Dkt. 1 ¶ 85 (N.D. Ill. Mar. 28, 2025).) All this shows is that the MassMutual GIF "doesn't boast one of the top four to six crediting rates in a given year," which is insufficient to support a claim of imprudence. *See Clinton*, 2025 U.S. Dist. LEXIS 253857, at *17.

### C.     Plaintiffs fail to allege "substantial" and "consistent" underperformance.

In addition to alleging a "meaningful benchmark," Plaintiffs must also allege the MassMutual GIF "consistently and substantially underperformed any such benchmark." (Motion at 10-11.) Plaintiffs attempt to bypass this requirement, asserting that the Court must accept as true their assertion that the MassMutual GIF's crediting rate is "unreasonable." (*See* Opp. at 10 (citing *Allen*, 835 F.3d at 680).) But labeling an interest rate "unreasonable" is a conclusion, not a factual allegation entitled to the presumption of truth. *Iqbal*, 556 U.S. at 679. And *Allen* does not suggest otherwise, as it supports the unremarkable position that a court must accept the complaint's plausible allegations as true on a motion to dismiss. *Allen*, 835 F.3d at 680. Nor are Defendants asking this Court to adopt "'bright-line' pleading 'rule[s]'" purportedly rejected by the Seventh Circuit. (Opp. at 11 (citing *Hughes II*, 63 F.4th at 623-24).)[4]

Plaintiffs' argument that the MassMutual GIF underperformed "by an average of over 24%" does not reflect actual underperformance but rather mathematical manipulation. (Opp. at 10.) Plaintiffs reach this 24% figure by taking the difference of the MassMutual GIF's average crediting rate from 2019-2024 (3.03%) and their comparators' alleged average rate of return over this same period (4.03%), yielding a 1% difference, and then dividing that difference (1%) by the comparators' average rate of return over that period (1/4.03), which produces 0.24 or 24%. (*See* SAC ¶ 114; Opp. at 10.) The natural reading of Plaintiffs' allegations is that the MassMutual GIF's crediting rate lagged by a mere 1%, not 24%, but Plaintiffs have used 24% to exaggerate underperformance.[5] *See Rodriguez v. Hy-Vee, Inc.*, No. 4:22-cv-00072-SHL-HCA, 2022 U.S. Dist.

---

[4] *Hughes II* found that merely providing a diverse menu of investments is insufficient to fulfill the duty of prudence, which is not applicable here. *Hughes II*, 63 F.4th at 624-25.

[5] The relevant question is how much *more* one investor earned than another. Accepting Plaintiffs' allegations as true, putting $100 into the MassMutual GIF would yield $3.03, and investing $100 into the "comparator average" would yield $4.03—a $1 difference, not a 24% difference.

LEXIS 200906, at *5 n.3 (S.D. Iowa Oct. 21, 2022) (rejecting similar comparison as "potentially misleading," where a small change as measured by raw dollars "can produce a large change on a percentage basis").

Numerous courts have dismissed claims where the alleged "underperformance" was less than 3%. (*See* Motion at 11); *see also Dawson v. Brookfield Asset Mgmt. LLC*, No. 1:25-cv-00852-PAB, 2026 U.S. Dist. LEXIS 64114, at *46-49 (N.D. Ohio Mar. 26, 2026) (dismissing underperformance claim because "courts throughout the country have found that underperforming by only one, two or even three percentage points is insufficient to infer imprudence"). Plaintiffs dismiss *Lalonde v. Mass. Mutual Ins. Co.*, 728 F. Supp. 3d 141, 156 (D. Mass. Mar. 29, 2024) because Plaintiffs are not arguing for a particular type or mix of funds. (Opp. at 11.) This is irrelevant. *Lalonde* rejected an inference of imprudence based on "underperformance" between 0.75–2.5%. 728 F. Supp. 3d at 156-57. And Plaintiffs argue *Barchock* is inapplicable because the plaintiffs in that case relied on industry averages, rather than the averages of specific "comparators." (Opp. at 11 (citing *Barchock v. CVS Health Corp.*, No. 16-061ML, 2017 U.S. Dist. LEXIS 59084, at *7-10 (D.R.I. Jan. 31, 2017), *adopted*, 2017 U.S. Dist. LEXIS 59083).) But like Plaintiffs here, the *Barchock* plaintiffs argued that deviations between the challenged SVF's performance and the average performance of "comparable funds" was sufficient to support an inference of imprudence. *Id.* at *16. The court found this was insufficient to state a claim in *Barchock*, as it is here. *See id.* at *17, 21. And Plaintiffs' reliance on cherry-picked "comparators" in this case is even weaker than the industry averages in *Barchock*. Although Plaintiffs *argue* their "comparators" represent "market rates," they allege no *facts* to support this conclusory argument in the SAC. (*See* Opp. at 3, 9.)

Plaintiffs' proffered case law does not save them. (Opp. at 10.) In *Miller v. Autozone, Inc.*,

the challenged SVF allegedly underperformed by 2.20% of an *identical product* offered by the same insurer. No. 2:19-cv-02779-MSN-tmp, 2020 U.S. Dist. LEXIS 206813, at *16-17 (W.D. Tenn. Sept. 18, 2020). *Lau* dealt with an SVF with a crediting rate of 1.5%, not a SVF that underperformed against a comparator by 1.5%. *Lau v. Metro. Life Ins. Co.*, 2016 U.S. Dist. LEXIS 134681, at *10-12 (S.D.N.Y. Aug. 22, 2016). The "underperformance by 0.07%" Plaintiffs refer to in *Somers v. Cape Cod Healthcare, Inc.*, 2024 U.S. Dist. LEXIS 156422, at *6 (D. Mass. Aug. 30, 2024) is a comparator fund with an expense ratio of 0.07%, not the degree of underperformance between a challenged investment and a comparator. (*See* Opp. at 10.) And *Carter v. Sentara*, No. 2:25-cv-16, 2025 U.S. Dist. LEXIS 165845, at *11 (E.D. Va. Aug. 11, 2025) noted that the Fourth Circuit "has not ruled that underperformance alone is insufficient to sustain an ERISA claim," but the Seventh Circuit and courts in this circuit have suggested otherwise. *See supra* II(A). Also, the *Carter* plaintiffs alleged the at-issue fund "underperformed a substantially similarly situated stable value option by 1.36%," and a peer group by 1.75%, which is greater than Plaintiffs' allegations here. 2025 U.S. Dist. LEXIS 165845, at *11; *id.*, Dkt. 1, Compl. ¶ 57.

Plaintiffs also fail to allege "consistent" underperformance. Plaintiffs argue that the alleged 1% underperformance is "consistent" because *Somers* found a five-year period sufficient. (Opp. at 10 (citing *Somers*, 2024 WL 4008527, at **3, 4).) But five years is a "relative blip" in time, which fails to demonstrate "consistent" underperformance. (*See* Motion at 11); *Smith*, 37 F.4th at 1166.

**D.      Plaintiffs fail to show their "comparators" were plausibly available.**

Plaintiffs must also allege facts showing that their comparators were "plausibly available," because if "the prudent course of action was unavailable, that will foreclose the claim." *Hughes II*, 63 F.4th at 630. As explained in Defendants' Motion, Plaintiffs fail to allege the comparators *or* rates alleged in the SAC were "plausibly available." (Motion at 9.) Indeed, the estimated crediting

rates are unreliable,[6] several of the estimated rates contradict the rates disclosed in the Form 5500s, and some of the crediting rates do not reflect the true crediting rate for synthetic GICs.[7] (*Id.* at 8-10); *see Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136, 1151 (10th Cir. 2023) (court was not required to accept as true allegations contradicted by a Form 5500); *Woznicki v. Aurora Health Care Inc.*, 2022 U.S. Dist. LEXIS 95368, at *8 (E.D. Wisc. May 27, 2022) (court need not defer to calculations that are facially and demonstrably wrong). If the alleged rates are unreliable or contradicted by Form 5500 disclosures, they cannot represent alternatives "plausibly available" to the Plan. *See Hughes II*, 63 F.4th at 630.

In response, Plaintiffs argue the rates alleged "were 'plausibly available' [to the] Plan based on several factors," and that they are not arguing Defendants should have offered the comparator products. (*See* Opp. at 9.) But Plaintiffs do not identify what these "factors" are, nor do they cite any allegation in the SAC supporting this assertion. (*See id.*) Plaintiffs also cannot keep their story straight. On the one hand, they argue that they have alleged *Defendants should have removed* the MassMutual GIF and replaced it with a better-performing SVF. (*See* Opp. at 5.) On the other, when confronted with their failure to plead their comparators were plausibly available, Plaintiffs contend *they are not arguing* that Defendants should have removed the MassMutual GIF for the

---

[6] Plaintiffs argue Defendants' "egregiously misrepresent the SAC" because "[t]he word 'estimate' is nowhere in the SAC." (Opp. at 9.) Defendants did not quote the SAC in describing the crediting rates as "estimates." Some of Plaintiffs' alleged crediting rates were not disclosed in the Form 5500s, and thus their counsel calculated what they believe the crediting rate was based on data in the Form 5500s. (Opp. at 9; *see also* SAC at p. 22 n. 10.) Plaintiffs try to dismiss these inaccuracies as a "negligible 0.03%" difference (Opp. at 9), but Plaintiffs' estimate for Pomona Valley differed from the disclosed rate by 0.14% and 0.96%. (*See* Motion at 8-9 n.7.)

[7] Plaintiffs argue "Defendants misrepresent the Gemba Plan's Form 5500 which shows the GICs were considered separately," (Opp. at 8 n. 3), but they misunderstand Defendants' argument. It was improper for Plaintiffs to consider those GICs separately, because the Gemba Plan did not offer those GICs separately. Rather, the Gemba Plan offered a single SVF, which was comprised of a portfolio of conventional GICs. (Motion, Ex. E, at p. 127.) Participants who invest in the SVF in the Gemba Plan earn interest based on the entire portfolio of GICs, not a single GIC. Therefore, the crediting rates for the underlying GICs were not plausibly available to the Plan.

comparators. (*See* Opp. at 9.) Either way, Plaintiffs fail to allege *facts* explaining how the comparators and the comparators' *rates* were "plausibly available." *See Hughes II*, 63 F.4th at 630; *Clinton*, 2025 U.S. Dist. LEXIS 253857, at *17 (dismissing claim where plaintiff failed to demonstrate there were "year-in, year-out better performing alternatives").

III.     **Plaintiffs fail to allege Defendants engaged in any prohibited transactions.**

     A.       **Plaintiffs cannot amend the SAC through their Opposition.**

Plaintiffs' Opposition demonstrates they are unsure of the basis of their prohibited transaction claim. Plaintiffs admit that *any* claim regarding the initial selection of the MassMutual GIF is time-barred. (Opp. at 4); *see also Appvion, Inc. Ret. Sav. & Emp. Stock Ownership Plan v. Buth*, 99 F.4th 928, 940 (7th Cir. 2024) ("ERISA contains a [six-year] statute of repose, which reflects 'a legislative judgment that a defendant should be free from liability after the legislatively determined period of time.'"). In response, to justify timeliness, they now assert they are challenging each "renewal contract, spread, and rate reset," each "'transfer to' MassMutual of Plan assets," and that "each payment" of fees constitutes a "continuing" or "ongoing violation." (Opp. at 4-5, 12-13.)[8] None of this is in the SAC, and the Court should reject Plaintiffs' new and unpled theories asserted for the first time in their Opposition. *See Agnew*, 683 F.3d at 348.

The SAC lacks a single allegation regarding "renewal contracts," and Plaintiffs also fail to allege or argue how they were injured by these supposed renewals. *Cunningham*, 604 U.S. at 708 ("District courts must also, consistent with Article III standing, dismiss suits that allege a prohibited transaction occurred but fail to identify an injury.") And Plaintiffs' only allegation

---

[8] Plaintiffs' comments about the Seventh Circuit's instructions on continuing violations are inapposite. (Opp. at 5.) Plaintiffs did not allege a violation of ERISA § 404(a)(1)(A). Moreover, in *Su v. Johnson*, a plan sponsor withdrew $825,000 from the plan in 123 transactions. 68 F.4th 345, 354 (7th Cir. 2023). That is not applicable here. And *Sweeney v. Nationwide Mut. Ins. Co.*, 2026 WL 352845, at *17 (S.D. Ohio Feb. 9, 2026) is not from the Seventh Circuit. (Opp. at 5.)

regarding "rate reset" is that the MassMutual GIF's "crediting rate *is reviewed* on a semiannual basis *for resetting*." (SAC ¶ 86 (emphasis added).) But reviewing a crediting rate is not a "transaction." *See Gardner-Keegan v. W.W. Grainger, Inc.*, No. 1:25-cv-5233, 2026 U.S. Dist. LEXIS 13772, at *32-33 (N.D. Ill. Jan. 26, 2026) ("[T]ransactions tend to involve multiple parties and some sort of exchange between them."). And Plaintiffs fail to allege injury from the "rate reset" or "review" of the crediting rate. *Cunningham*, 604 U.S. at 708.

Plaintiffs' argument regarding the "transfer to" MassMutual of Plan assets is vague and likewise unpled. (Opp. at 13 (citing SAC ¶ 121 (reciting elements of 29 U.S.C. § 1106(a))).) Read liberally, Plaintiffs may be arguing that every time a participant invested in the MassMutual GIF, and funds were transferred to MassMutual, this constituted a prohibited transaction. This is not alleged in the SAC, and Plaintiffs fail to allege or argue how they are harmed by these unidentified "transfers." (*See* SAC; Opp. at 13); *Cunningham*, 604 U.S. at 708. And this argument is non-sensical. Accepting this argument would mean 401(k) plans could never offer investments without engaging in a prohibited transaction.

Finally, Plaintiffs do not argue with any specificity, let alone allege facts in the SAC, about the continued payment of "investment fees" or "revenue sharing" or how Plaintiffs were allegedly harmed by these payments. (*See* Opp. at 4-5, 11-12, 13 n.5; SAC ¶ 148.) Indeed, the SAC contains no allegations regarding any Plan investment other than the MassMutual GIF, any investment fees associated with those investments, whether Plaintiffs invested in any "other proprietary options that paid revenue sharing to MassMutual/Empower," or that Plaintiffs paid any "revenue sharing" or "other investment fees." *Agnew*, 683 F.3d at 348; *Cunningham*, 604 U.S. at 708.

**B.** **Plaintiffs fail to state a prohibited transaction claim based on "spread."**

**1.** **Plaintiffs fail to plead a "transaction" or any injury from it.**

Defendants explained that MassMutual/Empower earning "spread" does not constitute a

-11-

"transaction." (Motion at 13.) In response, Plaintiffs merely argue each "spread [] was a transaction that was prohibited as 'compensation' paid to MassMutual." (Opp. at 12.) Earning "spread" is not a "transaction" in any common sense of the word. (Motion at 13-14.) And "'transaction' under § 1106(a) does not include payments in accordance with a contract." *D.L. Markham DDS v. Variable Annuity Life Ins. Co.*, 88 F.4th 602, 613 (5th Cir. 2023).

Defendants also explained that even assuming MassMutual/Empower's receipt of "spread" constitutes a prohibited "transaction," Plaintiffs lack Article III standing to assert this claim because they fail to allege they suffered any injury attributable to this supposed "transaction." (Motion at 12-13); *Cunningham*, 604 U.S. at 708. In response, Plaintiffs offer only a bare assertion, unsupported by any citation to the SAC or factual explanation, that they "have alleged an injury from the spread." (Opp. at 12.) And while Plaintiffs argue "overpayment" can constitute a sufficient "injury in fact," the SAC does not allege *Plaintiffs made* an overpayment. (*See id.*; SAC.)

### 2. **"Spread" is not a plan asset.**

Plaintiffs' prohibited transaction claim fails even if MassMutual/Empower's receipt of "spread" constitutes a "transaction" and Plaintiffs had alleged an "injury" from it. Defendants explained that, accepting Plaintiffs' allegations as true, the MassMutual GIF is a "guaranteed benefit policy ('GBP')," the assets underlying the MassMutual GIF are not plan assets subject to ERISA's fiduciary or prohibited transaction rules, and "spread" (i.e., money earned on non-plan assets) is not a plan asset. (Motion at 14.) Therefore, the "spread" cannot give rise to a prohibited transaction claim. (*Id.*) Plaintiffs' response is that even though the MassMutual GIF is a guaranteed investment contract, it is not automatically a GBP, and they are not required to plead around Department of Labor ("DOL") exemptions. (Opp. at 13-14 (citing *John Hancock Mut. Life Ins. Co. v. Harris Tr. & Sav. Bank*, 510 U.S. 86, 101 (1993) and *Cunningham*, 604 U.S. at 705-06, 709.) Neither argument saves their prohibited transaction claim.

*Harris Tr.* found that a portion of a contract that provided no genuine guarantee of benefit payments was not a GBP. 510 U.S. at 103-106. But Plaintiffs allege the MassMutual GIF is markedly different than the contract at issue in *Harris Tr.* Unlike the contract in *Harris Tr.*, Plaintiffs *expressly allege* the MassMutual GIF *guarantees* all principal *and* a contractually specified interest rate subject to a contractual minimum and maximum. (SAC ¶¶ 14, 86); *see Harris Tr.*, 510 U.S. at 106 (contract is a GBP if insurer provides guaranteed benefits).

Plaintiffs' argument about pleading DOL exemptions is also misplaced. (Opp. at 11.) Defendants make no argument about DOL exemptions. (*See* Motion at 14.) Indeed, unlike the defendants in *Cunningham*, 604 U.S. at 703-06, Defendants are not arguing Plaintiffs must allege *more* to plead around an exemption. Accepting Plaintiffs' allegations as true, the MassMutual GIF is a GBP, and the "spread" is not a plan asset subject to ERISA's fiduciary or prohibited transaction rules. 29 U.S.C. § 1101(b)(2); *Austin v. Union Bond & Tr. Co.*, No. 3:14-CV-00706-ST, 2014 U.S. Dist. LEXIS 177295, at *7 n.2 (D. Or. Nov. 10, 2014); *Healthcare Strategies, Inc. v. ING Life Ins. & Annuity Co.*, No. 3:11-CV-282 (JCH), 2012 U.S. Dist. LEXIS 6233, at *10-14 (D. Conn. Jan. 18, 2012) (dismissing claim finding "spread" was not a plan asset because investment was GBP); *see also Hecker v. Deere & Co.*, 556 F.3d 575, 584 (7th Cir. 2009) (fees collected from mutual fund assets are not plan assets).

Plaintiffs also argue courts "routinely reject GBP exemption arguments." (Opp. at 14.) But they cite three cases addressing the prohibited transaction exemptions in 29 U.S.C. § 1108, rather than the GBP exclusion in 29 U.S.C. § 1101(b)(2). (*See id.* (citing *Sweeney*, 2026 WL 352845, at *9 (analyzing application of exemptions in § 1108(b)(5)); *Moreno v. Deutsche Bank Ams. Holding Corp.*, 2016 WL 5957307, at *7 (S.D.N.Y. Oct. 13, 2016) (analyzing application of exemptions in § 1108(b)(8)); *Baird v. BlackRock Institutional Tr. Co., N.A.*, 2021 WL 105619, at *4 (N.D. Cal.

Jan. 12, 2021) (same)).) And Plaintiffs also cite several cases filed against *insurers* who offered SVFs, and the complaints in those cases included *specific factual* allegations that the GBP exclusion did not apply, which are not present in the SAC.[9] (Opp. at 14 (citing *Lau*, 2016 WL 5957687; *Wood v. Prudential Ret. Ins.*, 2016 WL 5940946 (D. Conn. Sept. 19, 2016); *Rozo v. Principal Life Fin. Ins. Co.*, 2015 WL 9920548 (S.D. Iowa Sept. 21, 2015)).) And *McGuire v. Metro. Life Ins. Co.*, No. 12-10797, 2014 U.S. Dist. LEXIS 109584, at *20-30 (E.D. Mich. Aug. 8, 2014) is distinguishable because the parties only disputed whether the GBP exclusion applied to a "non-guaranteed component" of the contracts, which permitted payment of dividends to the plan. Here, Plaintiffs allege the MassMutual GIF *guarantees* all principal *and* a contractually specified interest rate. (SAC ¶¶ 14, 86).

**IV. <u>Plaintiffs' Opposition does not save their derivative monitoring claim or request for prospective injunctive relief.</u>**

Because Plaintiffs' claims against the Committee fail, the derivative monitoring claim against Gallagher also fails. (Motion at 15.) But Plaintiffs' monitoring claim independently fails because they allege no facts to support it. (*See id.*) In opposition, Plaintiffs cite to a single conclusory allegation in support of their monitoring claim—Gallagher "breached its fiduciary monitoring duties by, among other things, 'failing to monitor and evaluate the performance of the Committee or have a system in place for doing so.'" (Opp. at 14-15 (citing SAC ¶ 138).) But the Court should not accept this conclusory allegation as true. *Iqbal*, 556 U.S. at 679. And while Plaintiffs cite to *Russell v. Ill. Tool Works, Inc.*, No. 22 C 2492, 2024 U.S. Dist. LEXIS 102157, at

---

[9] *See, e.g.*, *Lau*, No. 1:15-cv-09469-PKC-RWL (S.D.N.Y. Dec. 3, 2015), Dkt. 1, Compl. ¶ 34 ("[T]he assets which the Plans deposit and Defendant holds in the account and income earned thereon are the Plans' assets under ERISA."); *Wood*, No. 3:15-cv-01785-VLB (D. Conn. Dec. 3, 2015), Dkt. 1, Compl. ¶ 36 ("[T]he GAC is not a guaranteed benefit policy."); *Rozo*, No. 4:14-cv-00463-SHL-CFB (S.D. Iowa Nov. 14, 2014), Dkt. 1, Compl. ¶ 23 ("[T]he Contract does not guarantee payment of any particular benefit to Plans or their participants. Instead, it promises an unspecified rate of return … but investment risk incident to the Contract is borne by the Plans…").

*11 (N.D. Ill. June 10, 2024), the plaintiffs there alleged the monitoring defendant failed "to objectively and adequately review the Plan's investment portfolio," "to monitor the processes by which Plan investments were evaluated," *and* "to monitor and evaluate the performance of the Committee Defendants or have a system in place for doing so," among other failures. Plaintiffs allege far less here. (*See* SAC ¶ 138.)

Lastly, while Plaintiffs contend that as former participants they can seek prospective injunctive relief, they do not deny they have no threat of future injury arising from the conduct in the SAC. (*See* Opp. at 15; Motion at 15.) Instead, Plaintiffs argue ERISA plaintiffs can assert causes of action sweeping more broadly than their personal injury, including prospective injunctive relief. (Opp. at 15 (citing *Acosta v. Bd. of Trs. of Unite Here Health*, 779 F. Supp. 3d 974, 993–94 (N.D. Ill. 2025).) But *Acosta* addressed whether having current and former participants as class representatives defeated typicality, which is inapplicable. 779 F. Supp. 3d at 993-94. The weight of authority supports that former participants lack standing to seek prospective injunctive relief. *See, e.g.*, *Luckett*, 2024 U.S. Dist. LEXIS 144685, at *16 (collecting cases); *Coyer v. Univar Sols. USA Inc.*, No. 1:22 CV 0362, 2022 U.S. Dist. LEXIS 175972, at *12 (N.D. Ill. Sept. 28, 2022); *Daugherty v. Univ. of Chi.*, No. 17 C 3736, 2017 U.S. Dist. LEXIS 155948, at *17-18 (N.D. Ill. Sept. 22, 2017).

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' Motion. While Plaintiffs bury a request for leave to amend in their opposition (at 15), they did not move for leave or explain how they could cure the SAC. Therefore, the Court should dismiss the SAC with prejudice. *See Bausch v. Stryker Corp.*, 2009 U.S. Dist. LEXIS 77572, at *6-7, 10 (N.D. Ill. Aug. 31, 2009) (dismissing complaint with prejudice because request for leave in opposition was "improper").

Dated: April 1, 2026

/s/ Emily Seymour Costin
Emily Seymour Costin (*pro hac vice*)
Alston & Bird LLP
The Atlantic Building
950 F Street, NW
Washington, DC 20004
(202) 239-3300
emily.costin@alston.com

Kara L. McCall
Alston & Bird LLP
227 W. Monroe Street, Suite 3900
Chicago, IL 60606
312-702-8726
kara.mccall@alston.com

R. Blake Crohan (*pro hac vice*)
Alston & Bird LLP
One Atlantic Center
1201 W. Peachtree Street, Suite 4900
Atlanta, GA 30309
(404) 881-4625
Email: blake.crohan@alston.com

*Counsel for Arthur J. Gallagher (Illinois),
LLC and the Arthur J. Gallagher Co.
Employees' 401(k) Savings and Thrift Plan
Benefits Committee*

-16-