**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LOLITHA FARRAR and NAKIA WOODARD, individually and on behalf of all others similarly situated, | ) | |
| Plaintiffs, | ) | No. 25 C 13005 |
| v. | ) | Judge Sara L. Ellis |
| ARTHUR J. GALLAGHER (ILLINOIS), LLC, THE ARTHUR J. GALLAGHER & CO. EMPLOYEES' 401(k) SAVINGS AND THRIFT PLAN BENEFITS COMMITTEE and JOHN DOES 1–10, | ) | |
| Defendants. | ) | |

**<u>OPINION AND ORDER</u>**

Plaintiffs Lolitha Farrar and Nakia Woodard bring this case on behalf of themselves and all others similarly situated who were participants in or beneficiaries of a defined contribution plan offered by their employer, Arthur J. Gallagher (Illinois), LLC ("Arthur J. Gallagher"). Plaintiffs assert claims against Defendants Arthur J. Gallagher, the Arthur J. Gallagher & Co. Employees' 401(k) Savings and Thrift Plan Benefits Committee (the "Committee"), and the members of the Committee for breach of the fiduciary duty of prudence, failure to monitor, and prohibited transactions under the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* Defendants now move to dismiss under Federal Rule of Civil Procedure 12(b)(6). Because Plaintiffs have failed to state any of their claims, the Court grants the motion to dismiss.

## BACKGROUND[1]

Arthur J. Gallagher sponsors the Arthur J. Gallagher & Co. Employees' 401(k) Savings and Thrift Plan (the "Plan"), a defined contribution plan enabling eligible employees to make tax-deferred contributions from their salaries to a retirement account. The Committee administers the Plan, and the Committee must designate at least three investment funds as available investment options to Plan participants. The Committee also has the discretionary power to change the available investment funds and increase or decrease the number of available investment options.

One of the investment funds available to Plan participants is the Massachusetts Mutual Life Insurance Company ("MassMutual")[2] Guaranteed Interest Fund ("MassMutual GIF"), a guaranteed investment contract ("GIC") that provides a guaranteed rate of return, or crediting rate, during a specified period. GICs are stable value funds that generally allow participants to protect their assets from risk of loss, although the amount of risk may vary depending on the type of fund. Synthetic stable value funds, for example, are the least risky because multiple wrap providers guarantee the principal. Separate account GICs, on the other hand, are riskier because they hold assets in a separate account of an insurance carrier and have only one wrap provider. General account GICs, including the MassMutual GIF, hold their funds unrestricted in the

---

[1] The Court takes the facts in the background section from Plaintiffs' second amended complaint and presumes them to be true for the purpose of resolving Defendants' motion to dismiss. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013). Although the Court normally cannot consider extrinsic evidence without converting a motion to dismiss into one for summary judgment, *Jackson v. Curry*, 888 F.3d 259, 263 (7th Cir. 2018), the Court may consider "documents that are central to the complaint and are referred to in it" in ruling on a motion to dismiss, *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

[2] On December 31, 2020, Empower Retirement LLC ("Empower") acquired MassMutual. Doc. 20 ¶ 15 n.4. For simplicity, the Court will refer to Empower and MassMutual collectively as "MassMutual" for purposes of this Opinion.

general account of the insurance carrier. These are therefore the riskiest form of GIC because they are more vulnerable to a single entity credit risk. For this reason, general account GICs offer the highest crediting rates.

Many insurance companies offer GICs with competitive rates, and multiple identical or substantially identical stable value funds with higher crediting rates were available to the Plan. For example, the Variable Annuity Life Insurance Company provided a GIC, the Shands Jacksonville Retirement Plan, which consistently performed better than the MassMutual GIF from 2019 to 2024. Other GICs with similar characteristics outperformed the MassMutual GIC at times during this same period, as shown below:

**Table 1. Calculated Yield/Crediting Rates of MassMutual GIF and Alleged Comparators**

| Plan Name | Calculated Yield/Crediting Rate (%)[3] | | | | | |
|---|---|---|---|---|---|---|
| | 2019 | 2020 | 2021 | 2022 | 2023 | 2024 |
| MassMutual GIF | 3.20 | 3.00 | 3.00 | 3.00 | 3.00 | 3.00 |
| Shands Jacksonville Retirement Plan | 4.47 | 4.33 | 4.43 | 4.30 | 4.31 | 4.38 |
| Baylor College of Medicine Retirement Plan | 4.29 | 4.16 | 4.23 | 4.37 | – | – |
| Jackson National Life Insurance Company Defined Contribution Plan | 4.28 | – | – | 3.83 | – | – |
| Holzer Health System 401(a) Profit Sharing Plan | 3.98 | – | 4.02 | – | – | – |
| American United Life Progress Sharing Plan and Trust | 3.70 | 3.54 | 3.87 | 3.90 | – | – |
| HCC Insurance Holdings Inc. 401(k) Plan | 3.56 | 3.56 | – | – | – | – |
| Alina 401(k) Retirement Savings Plan | – | 3.72 | – | 3.69 | – | – |
| Gemba Group Annuity Plan (National Ohio Financial Services) | – | – | 4.97 | – | – | – |
| Gemba Group Annuity Plan (Principal Life Insurance Company) | – | – | 3.84 | – | – | – |
| International Imaging Materials Inc. Plan | – | – | – | 4.89 | – | – |
| Trugreen Profit Sharing and Retirement Plan | – | – | – | 3.67 | – | – |
| Valley Hospital Defined Contribution Plan | – | – | – | – | 4.57 | – |
| Mattel, Inc. Personal Investment Plan | – | – | – | – | 3.71 | – |
| Pomona Valley Hospital Medical Center Ret. Plan | – | – | – | – | 3.64 | – |
| Auto-Owners Insurance Company Retirement Plan | – | – | – | – | 3.48 | – |
| Lexmark Savings Plan | – | – | – | – | – | 3.38 |
| Martignetti Companies, LLC 401(k) Plan | – | – | – | – | – | 4.35 |
| Northeast Medical Services Profit Sharing 401(k) Plan | – | – | – | – | – | 4.58 |
| Boyd Company 401(k) Plan | – | – | – | – | – | 3.21 |

Doc. 1 ¶¶ 94–113.

Plaintiffs both participated in the Plan and invested in the MassMutual GIF. They allege that they suffered "devastating losses" because of the MassMutual GIF's underperformance. *Id.* ¶ 120. On the other hand, they allege that MassMutual "reaped a windfall" because it retained

[3] Plaintiffs clarify that, "[f]or crediting rates not identified in the plans' Form 5500s, the calculated yield is interest credited divided by the end of year balance." Doc. 20 ¶ 94.

any value earned on their investments above and beyond the crediting rates paid out to investors. *Id.* ¶ 17.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

### I. Count I: Breach of the Fiduciary Duty of Prudence

Plaintiffs first bring a claim for breach of the fiduciary duty of prudence against the Committee and its members, alleging that they imprudently retained the MassMutual GIF, an "underperforming investment option that also carried significantly more risk than other investment options that had similar goals, *i.e.,* preservation of investment assets." Doc. 20 ¶¶ 16, 130.[4] "To state a breach of the duty of prudence under ERISA, a plaintiff must plead '(1) that

---

[4] Defendants argue, and Plaintiffs agree, that the statute of limitations bars this claim to the extent that it is based on "the initial selection of the GIF." Doc. 23 at 4.

the defendant is a plan fiduciary; (2) that the defendant breached its fiduciary duty; and (3) that the breach resulted in harm to the plaintiff.'" *Albert v. Oshkosh Corp.*, 47 F.4th 570, 579 (7th Cir. 2022) (citation omitted). At issue here is the second element.

ERISA plan fiduciaries have a duty to act with "the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). A "subset of the duty of prudence" is the "continuing duty to monitor [plan] investments and remove imprudent ones." *Hughes v. Nw. Univ.*, 63 F.4th 615, 626 (7th Cir. 2023) (citing *Tibble v. Edison Int'l*, 575 U.S. 523, 529 (2015)). "If the fiduciaries fail to remove an imprudent investment from the plan within a reasonable time, they breach their duty." *Id.* (citation omitted). Importantly, "the prudence standard is processed-based, not outcome-based," meaning that "a Plan's mere underperformance is not actionable so long as the fund administrators acted prudently." *Martin v. CareerBuilder, LLC*, No. 19-cv-6463, 2020 WL 3578022, at *4 (N.D. Ill. July 1, 2020) (citation omitted); *see also Albert*, 47 F.4th at 579 ("[T]he ultimate outcome of an investment is not proof of imprudence.").

Plaintiffs admittedly have no insight into the process used by the Committee when monitoring and choosing to retain the MassMutual GIF. *See* Doc. 20 ¶ 70 ("Plaintiffs did not have and do not have actual knowledge of the specifics of Defendants' decision-making process with respect to the Plan[.]"). But this does not end the analysis, because ERISA plaintiffs may permissibly "rely upon inferential evidence of imprudence at the pleading stage . . . by identifying other similar investment funds with significantly better rates of returns and less expense." *Hensley v. Molson Coors Beverage Co. USA LLC Governance Comm.*, No. 25-C-1371, 2026 WL 1878633, at *3 (E.D. Wis. June 30, 2026); *see also Clinton v. Baxter Int'l Inc.*,

No. 25 CV 3368, 2025 WL 3470685, at *3 (N.D. Ill. Dec. 3, 2025). "To warrant an inference of imprudence in selecting a particular fund, however, a plaintiff must identify other funds that provide a sound basis for comparison and constitute 'a meaningful benchmark.'" *Hensley*, 2026 WL 1878633, at *3; *see also Clinton*, 2025 WL 3470685, at *3 (because plaintiff "relies on 'reasonable inferences' and comparisons to other stable value GICs to state his claim," he must "plausibly allege[] meaningful comparisons and rates of underperformance").

Plaintiffs have identified nineteen other funds as comparators, and the parties argue over whether Plaintiffs have sufficiently alleged that these other funds are similar enough to the MassMutual GIF to provide for a meaningful comparison. But the Court need not resolve this issue because, even assuming that the alleged comparators are sufficiently similar, Plaintiffs do not allege that each of these comparators consistently overperformed the MassMutual GIF throughout the class period. Rather, Plaintiffs identify only one comparator that overperformed throughout the entirety of the class period and, for the remaining comparators, allege only that they overperformed during certain portions of the class period. Indeed, Plaintiffs provide only one year of data for twelve of the comparators and two years of data for four of the comparators.

The failure to identify a consistent sample of comparators warrants dismissal because, to allow an inference of imprudence, a plaintiff "must show—at minimum—that there were year-in, year-out better-performing alternatives that cast doubt on the Investment Committee's process for monitoring and renewing its own funds." *Clinton*, 2025 WL 3470685, at *7. "Citing to a rotating cast of funds with higher crediting rates in different years"—as Plaintiffs do here—"is blatant cherry-picking and cannot support a claim of imprudence." *Hensley*, 2026 WL 1878633, at *5 (granting motion to dismiss where the comparators "change year to year and thus fail to demonstrate the kind of continuing underperformance needed to raise an inference of

imprudence"); *see also Clinton*, 2025 WL 3470685, at *7 (same). And the fact that one comparator consistently overperformed the MassMutual GIF throughout the class period does not change this conclusion, because a single comparator does not support an inference of imprudence. *See Laabs v. Faith Techs., Inc.*, No. 20-CV-1534, 2023 WL 9321358, at *9 (E.D. Wis. Aug. 30, 2023) ("[B]y offering just a single comparator, the amended complaint lends itself to reasonable accusations of cherry-picking that further undermine any inference of plausibility."), *report and recommendation adopted*, No. 20-C-1534, 2024 WL 218418 (E.D. Wis. Jan. 19, 2024); *Schave v. CentraCare Health Sys.*, No. 22-CV-1555, 2023 WL 1071606, at *6 (D. Minn. Jan. 27, 2023) (granting motion to dismiss where "the complaint identifies only one alleged comparator for each challenged fund for a 5-year period").

Notably, Plaintiffs failed to respond to this argument in response to the motion to dismiss and have thus waived the issue. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."). The Court therefore grants the motion to dismiss Count I.

## II. Count II: Failure to Monitor Other Fiduciaries

Plaintiffs also assert a derivative duty to monitor claim against Arthur J. Gallagher, which they concede "is predicated on the breach of the fiduciary duty of prudence claim." Doc. 23 at 14; *see also Albert*, 47 F.4th at 583 ("[Plaintiff's] duty to monitor claims rise or fall with his duty of prudence . . . claims."). Because the Court dismisses the fiduciary duty claim, the duty to monitor claim necessarily fails. The Court therefore dismisses Count II.

## III. Count III: Prohibited Transactions

Finally, Plaintiffs allege that Defendants caused the Plan to engage in prohibited transactions with MassMutual in violation of ERISA Section 406, 29 U.S.C. § 1106(a)(1). This

provision provides, among other things, that a plan fiduciary "shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect" (1) "sale or exchange . . . of any property between the plan and a party in interest;" (2) "furnishing of goods, services, or facilities between the plan and a party in interest;" or (3) "transfer to, or use by or for the benefit of a party in interest, of any assets of the plan." 29 U.S.C. § 1106(a)(1)(C).

There is no dispute that Plaintiffs have sufficiently alleged that MassMutual is a party in interest, given that MassMutual allegedly provides recordkeeping services to the Plan. Doc. 20 ¶ 147; 29 U.S.C. § 1002(14) (defining a party in interest of an employee benefit plan as "a person providing services to such plan"). Beyond this, however, the allegations underlying Plaintiffs' prohibited transactions claim are far from clear. In the second amended complaint, Plaintiffs vaguely allege that Defendants caused the Plan to engage in prohibited "annuity transactions" with MassMutual that "occurred each time the Plan paid fees to MassMutual/Empower in connection with the Plan's investments in the MassMutual GIF and other proprietary options that paid revenue sharing to MassMutual/Empower." Doc. 20 ¶¶ 145–148. They further allege that Defendants engaged in prohibited transactions by "allow[ing] Plan assets to be invested in the MassMutual GIF that performed poorly when compared to other investments that were available." *Id.* ¶ 123.[5] The second amended complaint includes no factual

[5] In Plaintiffs' response to the motion to dismiss, they argue for the first time that "[e]ach renewal contract, spread, and rate reset was a transaction that was prohibited as 'compensation' paid to MassMutual." Doc. 23 at 12. While the second amended complaint alleges that MassMutual retained the "spread" from Plan participants investments', Doc. 20 ¶ 17, it does not allege that this spread was, in and of itself, a prohibited transaction. Nor does the second amended complaint allege that renewal contracts or rate resets were prohibited transactions. Because "[i]t is a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss," *Thomason v. Nachtrieb*, 888 F.2d 1202, 1205 (7th Cir. 1989), the Court disregards these new theories.

allegations regarding the nature of these alleged fees, revenue sharing agreements, or other supposed transactions, and for this reason alone Plaintiffs have failed "to raise the right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *see also Guyes v. Nestle USA, Inc.*, No. 20-CV-1560, 2022 WL 18106384, at *8 (E.D. Wis. Nov. 21, 2022) (dismissing prohibited transaction claim as conclusory because "[t]he complaint alleges merely that for each year from 2014 to 2018 the plan made payments to [the party in interest] for 'Commissions and Fees'"), *report and recommendation adopted*, No. 20-C-1560, 2023 WL 22629 (E. D. Wis. Jan. 3, 2023); *Scott v. Aon Hewitt Fin., Advisors, LLC*, No. 17 C 679, 2018 WL 1384300, at *10–11 (N.D. Ill. Mar. 19, 2018) (holding that conclusory allegations that plaintiff "engaged in a prohibited transaction by charging and accepting excessive fees" were "not sufficient to raise the right to relief above the speculative level at this point without more"). The Court therefore dismisses Count III.[6]

**CONCLUSION**

For the foregoing reasons, the Court grants Defendants' motion to dismiss [21]. The Court dismisses the amended complaint [20] without prejudice and gives Plaintiffs until September 18, 2026 to file a third amended complaint in conformity with this Opinion and Order.

Dated: August 17, 2026

SARA L. ELLIS
United States District Judge

[6] Because the Court finds that the allegations regarding the prohibited transactions claim are too vague and conclusory to survive a motion to dismiss, the Court does not address Defendants' remaining arguments for dismissal of this claim at this time.